# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PSSI Stadium LLC                           :
                                           :
            v.                             :    No. 600 C.D. 2020
                                           :    ARGUED:  May 10, 2021
City of Pittsburgh Zoning Board of         :
Adjustment and City of Pittsburgh,         :
                        Appellants         :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MARY HANNAH LEAVITT, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                          **FILED:  August 3, 2021**


The City of Pittsburgh Zoning Board of Adjustment (ZBA) and City of Pittsburgh (collectively, City) appeal from an order of the Court of Common Pleas of Allegheny County that reversed the ZBA's decision determining that the proposed signage for the subject property, Heinz Field, was not a permitted interior sign under Section 919.03.A of the City of Pittsburgh's Zoning Code and, therefore, not permitted as of right.[1]  We affirm the trial court.

Heinz Field is a 68,400-seat football stadium located in the City's North Shore at 900 Art Rooney Avenue and defined in the Zoning Code as a "Major Public Destination Facility."[2]  (ZBA's Aug. 15, 2019, Dec., Finding of Fact "F.F." Nos. 1,

---

[1] Pursuant to the Pennsylvania Supreme Court's May 28, 2020 emergency operations order pertaining to the Fifth Judicial District, the City's appeal was timely filed.

[2] A major public destination facility is defined as a structure with a minimum annual attendance of 500,000 people or seating to accommodate a minimum of 10,000 people at a single event.  Zoning Code § 919.01.C(10).

3, and 5.) The open-air stadium has two decks of seating on the north, east, and west sides. (*Id.*, F.F. No. 5.) The scoreboard and a single deck of seating are on the south side, where the main entrances are located. (*Id.*) The stadium has four exterior facades, with overhangs over a portion of the seats on the east and west sides. (*Id.*, F.F. No. 6.) Zoned RIV-NS (Riverfront, North Shore Subdistrict), Heinz Field has frontage on Art Rooney Avenue, Reedsdale Street, and North Shore Drive. (*Id.*, F.F. No. 2.) "The confluence of the Allegheny and Monongahela Rivers into the Ohio River is located across North Shore Drive from [Heinz Field]." (*Id.*) The Sports & Exhibition Authority of Pittsburgh owns Heinz Field and Applicant, PSSI Stadium LLC, is the stadium's primary tenant. (*Id.*, F.F. No. 4.)

Applicant's proposed signage involves the stadium's seats, which "are visible from a number of locations and buildings throughout the downtown area, from the opposite side of the rivers[,] and from Mount Washington." (*Id.*, F.F. No. 7.) They also can be seen in aerial views from above the stadium. (*Id.*) Primarily, the seats are painted yellow. (*Id.*) Applicant proposes painting a select number of the seats on the lower deck of the northern side of the stadium in an unspecified contrasting color and pattern depicting "words." These words "would be oriented toward the southern, open end of the stadium and would be visible from locations outside the stadium and from above the stadium." (*Id.*, F.F. No. 8.) The proposed signage would spell out the name of the stadium—Heinz Field.[3] (Feb. 19, 2020, Trial Ct. Op. at 1.)

Before the City's Zoning Administrator, Applicant maintained that the information conveyed on the painted seats should be considered a non-advertising, interior sign within the stadium structure permitted by right under Section 919.03.A

---

[3] At oral argument before this Court, the parties confirmed that the chairs would spell out "Heinz Field."

of the Zoning Code and exempt from dimensional limitations. The Zoning Administrator disagreed, concluding that the proposed interior alterations to the seats did not constitute a non-advertising sign on the inside of a structure that was designed not to be seen from the exterior of the structure. (ZBA's Aug. 15, 2019, Dec., Conclusion of Law "C.L." No. 9.) Instead, he determined that the proposed signage was analogous to a roof sign because it "was designed to face the sky and would be seen from that perspective" and would "be visible in the same way that a prohibited roof sign is designed to be visible." (*Id*., C.L. No. 10.)

Subsequently, Applicant filed a protest appeal with the ZBA without seeking any type of variance. (*Id*., F.F. Nos. 10 and 11.) In addition to arguing that its proposed signage was a permitted interior sign, Applicant disagreed with the Zoning Administrator that the proposed sign was a roof sign. Applicant also argued that the ZBA should be bound by its 2012 decision involving the Highmark Stadium whereby it permitted the "HOUNDS" sign in the seating area of the open-air stadium home to the Riverhounds Soccer Club. (Zone Case 141 of 2012, ZBA's Sept. 6, 2012, Dec. at 1-2; Reproduced R. "R.R." at 113a-14a.)[4] Following a hearing, the ZBA denied Applicant's appeal. Without taking additional evidence, the trial court reversed. The City's appeal followed.

Initially, we note that the ZBA in the present matter failed to apply the Zoning Code uniformly as evidenced by the analogous Highmark Stadium case where the applicant sought a variance to arrange colored seating in such a way that the unoccupied seats would spell out "HOUNDS." In that case, the ZBA determined that the proposed signage for the soccer stadium was an interior sign under Section 919.03.A of the Zoning Code and did not require a variance notwithstanding the fact

---

[4] (May 23, 2019, ZBA Hr'g, Protestant Ex. 9.)

that signage would be visible along the Monongahela River[5] in front of the stadium. (*Id*., C.L. No. 3; R.R. at 114a.) In support, the ZBA concluded that the applicant presented adequate evidence that other stadiums in the City had interior facing signs that were minimally visible from the outside.[6] (*Id.*, C.L. No. 4; R.R. at 114a.) Accordingly, the ZBA in the Highmark Stadium case determined that "the inward-facing sign exception [was] pertinent to the proposed development and negate[d] the need for a drastic variance" such that the applicant's request for that relief was unnecessary. (*Id.*)

In the present case, the ZBA attempted to distinguish the Highmark Stadium case, citing different evidence, sign design, location, zoning district, and the absence of any analysis of the evidence presented in the context of the Zoning Code provisions, including Section 919.03.A. (ZBA's Aug. 15, 2019, Dec., C.L. No. 25.) In addition, it referenced the alleged absence of a discussion or interpretation of the Zoning Code's requirements. (*Id.*) Specifically, the ZBA concluded:

> In [the Highmark Stadium case], the applicant sought a variance from the signage requirements for the SP-4 [Specially Planned] District [on the South Shore] to allow a 6,250 [square-foot] sign where 160 [square-foot] would be permitted. The findings of fact in that decision made clear that, as described to the [ZBA], the sign was intended to identify only the name of the team and not any other

---

[5] In the Highmark Stadium case, the ZBA did not identify which river was in front of Highmark Stadium. However, the Court may take judicial notice that Highmark Stadium is on the south shore of the Monongahela River.

[6] Notably, the Zoning Administrator who issued the initial determination in the present case was an objector in the Highmark Stadium case before assuming his position with the City. In the Highmark Stadium case, the ZBA described the objectors' concern that "allowing this kind of lettering would set a bad precedent for appropriate signage in the Riverfront area." (ZBA's July 19, 2012, Dec., F.F. No. 7; R.R. at 114a.)

4

information and that the sign would be generally obstructed from view.

(*Id.*)

The ZBA's summation of the analysis in the Highmark Stadium case is inaccurate. As noted, the ZBA in that case did cite and analyze Section 919.03.A of the Zoning Code. (ZBA's July 19, 2012 Dec., C.L. No. 3; R.R. at 114a.) Additionally, the two cases are essentially analogous in that they both involve stadium seats depicting words that would be obstructed from view when occupied but incidentally visible from the exterior of the respective stadiums. In any case, the Zoning Code has not changed since the ZBA decided the Highmark Stadium case.

We acknowledge that a prior zoning board decision does not constitute binding precedent, *Peach Bottom Township v. Peach Bottom Township Zoning Hearing Board*, 526 A.2d 837, 838-39 (Pa. Cmwlth. 1987), and that the failure to uniformly enforce an ordinance provision does not necessarily bar subsequent enforcement. *Zajdel v. Bd. of Supervisors of Peters Twp.*, 925 A.2d 215, 219 (Pa. Cmwlth. 2007). For instance, regarding variances, we have noted that "grants of variances to one's neighbors, do not, as a matter of law, furnish a property owner with any legal justification for a variance, [and] previous variances do not oblige the board to grant yet another." *Vito v. Zoning Hearing Bd. of Borough of Whitehall*, 458 A.2d 620, 621 (Pa. Cmwlth. 1983). Nonetheless, this doctrine should not be used to justify whimsical and arbitrary applications of ordinances. Applicants for zoning relief and/or interpretation of zoning provisions should be able to rely on a reasonably consistent application of a zoning ordinance, especially where the pertinent provisions have remained unchanged.

Regardless of the issue regarding uniform application, we must conclude that the ZBA erred as a matter of law. Three Zoning Code sign definitions

are relevant to our analysis. "Signs Inside Buildings," categorized as non-advertising signs, are defined as follows:

> Signs on the inside of the buildings or other structures, designed not to be seen from the exterior of such buildings or structures shall be permitted in any district with unlimited size and interior location.

Zoning Code § 919.03.A. A "roof sign," prohibited in all zoning districts, is defined as "[a]ny roof sign or sign that extends above the roof line or parapet wall." *Id*., § 919.01.E(6). An "Identification Sign," in pertinent part, is "a sign used to identify . . . the name of a public destination facility . . . ." *Id*., § 919.01.C(4). Identification signs for public destination facilities are regulated in Section 919.03.M.7(b) of the Zoning Code and pertain to exterior locations.

On appeal, the City argues that the ZBA properly determined that the proposed signage was an exterior sign requiring a variance from the Zoning Code's dimensional limitations. In support, the City maintains that Applicant's proposed signage did not meet the definition of interior sign because it would be plainly visible from the exterior consistent with the ZBA's finding that it "would be oriented toward the southern, open end of the stadium and would be visible from locations outside the stadium and from above the stadium." (ZBA's Aug. 15, 2019, Dec., F.F. No. 8.)

The City's position is without merit. The proposed signage is plainly not an exterior sign; it lies entirely inside the structure. Moreover, even if the City is correct that the painted seats would not qualify as an interior sign which is specifically permitted, we cannot agree that the signage is prohibited under the Zoning Code. To the extent that the ZBA concluded that the proposed signage was

6

either a roof sign or "analogous thereto," we reject its determination.[7] The seats designated for signage are located on the lower deck of the northern side of the stadium and do not extend above the roof line or the exterior façade of the open-air stadium. This is clear from the exhibit depicting lettering on those seats. (May 23, 2019, ZBA Hr'g, Protestant Ex. 3; R.R. at 200a.) As the City conceded at oral argument before this Court, logos located on the playing field for the Steelers, the University of Pittsburgh, and the National Football League are permissible even though they can be viewed from the exterior of the stadium. In that respect, the proposed signage spelling out "Heinz Field" is tantamount to a logo on or near the playing field. The only difference is that the proposed signage would spell out the name of the stadium, consistent with an identification sign depicting the name of the public destination facility but located in the stadium's interior. Therefore, even if we were to agree, *arguendo*, that a proposed use can be rejected on the basis that it is "analogous to" one which is prohibited (absent language in the ordinance banning those which are similar to those prohibited), we find the proposed painted seats far more analogous to the field signage discussed above than to a roof sign as defined in the Zoning Code.

For all the foregoing reasons, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[7] This Court has often noted that a zoning hearing board's interpretation and application of its zoning ordinance is entitled to some deference, but the board has an obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use of its land and to resolve any doubt in favor of the landowner. *Reihner v. City of Scranton Zoning Hearing Bd.*, 176 A.3d 396, 400 (Pa. Cmwlth. 2017).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PSSI Stadium LLC

        v.

City of Pittsburgh Zoning Board of
Adjustment and City of Pittsburgh,
                      Appellants

:
:
:   No. 600 C.D. 2020
:
:
:
:
:

## **O R D E R**

AND NOW, this 3rd day of August, 2021, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita